James K. **WILKINSON** and Charmine **Wilkinson, Plaintiffs-Appellees,**

v.

The **HOME INSURANCE COMPANY, Defendant-Appellant.**

No. 77–2330.

United States Court of Appeals, Ninth Circuit.

Jan. 25, 1978.

.Annette Y. W. Chock, Honolulu, Hawaii, for defendant-appellant.

Robert M. Rothwell, Honolulu, Hawaii, for plaintiffs-appellees.

Before HUFSTEDLER, SNEED, and KENNEDY, Circuit Judges.

PER CURIAM:

The Home Insurance Company ("Home") appeals from a summary judgment in favor of the Wilkinsons in their action to recover for the loss of a tender which they claimed was covered by their yacht insurance policy with Home. The issue is whether the loss of the tender was excluded under the terms of the policy because the property was stolen while it was tied up on the beach and the policy excluded loss by theft "unless the

property be in a fully enclosed area into which there be visible evidence of forcible entry or unless the property be forcibly removed from the yacht."

Home insured the Wilkinsons' yacht and tender. On September 5, 1976, the Wilkinsons went ashore in the tender and, after landing, they chained the tender to a volley ball net standard on the grounds of the Sheraton Maui Hotel. Upon their return, they discovered that the tender was gone. They filed a claim with Home for the loss of the tender. Home denied the claim, and the Wilkinsons brought this action on the policy.

The policy has a special "tenders clause" which provides, in pertinent part, that the term "yacht" includes the tender "whether attached to the yacht or not, subject to all the terms and conditions of this policy," so long as a proportion of the amount of insurance is allocated to the tender. The policy allocated $2,000.00 to the tender. The exclusions clause from the basic "coverage 'A'—Hull Insurance" policy provided that the policy did not insure: "Loss by theft or mysterious disappearance of any of the property insured unless occurring in conjunction with the theft of the entire yacht, or unless the property be in a fully enclosed area into which there be visible evidence of forcible entry or unless the property be forcibly removed from the yacht."

Home contended that the tenders clause simply means that the tender is insured like all other equipment on the yacht and that it is subject to the provisions of coverage "A— Hull Insurance." The entire yacht was not stolen, the tender was not taken from the yacht, nor was it taken from an enclosed area on land. Therefore, it concludes that the theft of the tender was excluded from the policy.

The Wilkinsons contended that to construe the exclusion in accordance with its literal terms means that its purchase of insurance for the tender was ephemeral. The tender is designed for use away from the yacht and, in Hawaii, "there is really nothing one can do with the tender but leave it at the dock or beach" because en-closed areas on land for securing the tender rarely, if ever, exist. They argue that it would be inequitable and contrary to the purpose of the policy to insure the tender to limit recovery for theft only to those situations in which the tender is stolen with the yacht, from the yacht, or from an enclosed area. They also claim that the tenders and exclusions clauses are in conflict, and given the doctrine that inconsistencies are to be read against the insurer, they ought to prevail.

Ambiguities and conflicts in insurance policies are regularly resolved in favor of the insured. (*E. g., Industrial Indemnity Co. v. Aetna Casualty & Surety Co.*, 465 F.2d 934 (9th Cir. 1972); *Tenopir v. State Farm Mutual Company*, 403 F.2d 533 (9th Cir. 1968).) Equally well settled is the principle that insurance contracts are to be construed liberally in the insured's favor and that policy exclusions are strictly construed against the insurer. (*E. g., Kalmbach, Inc. v. The Insurance Company of the State of Pennsylvania, Inc.*, 529 F.2d 552 (9th Cir. 1976); *First Insurance Company of Hawaii, Ltd. v. Continental Casualty Co.*, 466 F.2d 807 (9th Cir. 1972).) However, "words in an insurance policy are to be given the 'meaning which they ordinarily would have in order to effectuate the purpose of the exclusion.'" (*Potts v. Continental Casualty Co.*, 453 F.2d 276, 277 (9th Cir. 1971).)

Despite the ingenuity of the Wilkinsons, we are unable to discover any ambiguity or inconsistency in this policy. Nothing in the special tenders clause suggests that the tender is exempted from the requirements and exclusions of the general coverage. The clause is a recognition of the undisputed fact that the tender is optional, separately purchased equipment, which might not be treated as insured at all, but for the special tenders clause. No reasonable expectations of coverage are nullified by rejecting the claim that the tenders clause has special implicit significance. Like all other equipment and machinery next to or on the yacht, the tender is insured against all risks of physical loss or damage, damage from strikes, riots, and other upheavals, and

the tender is also insured in the event of theft from the yacht, with the yacht, or from an enclosed area on the shore. We fail to see anything which is either inconsistent or even unreasonable in the policy's explicit refusal to insure against theft or disappearance of the tender when it is taken ashore and not protected by an enclosure.[1]

Construing the policy in accordance with its plain meaning has the effect that the Wilkinsons had no insurance coverage to protect them from theft of the tender when they used it normally to ferry passengers and left the tender ashore. That fact does not mean that their coverage was illusory; it means that they did not purchase insurance to cover the risk which would be often, or even usually, encountered while using the tender in Hawaii. Nothing on the face of this record suggests that the Wilkinsons did not receive what they paid for, which was very limited protection of the tender when it was used away from the yacht.

The Wilkinsons argued below that the effect of the tenders clause, especially the phrase "whenever the term 'yacht' is used in this policy it shall be understood to include the yacht's tender" was that the tender should be treated as a separately insured vessel for the purposes of the policy. Thus, they argued, the tender should be equated with the yacht with the effect that whenever the term "yacht" is used, it should be read as if it said "yacht or tender," thereby construing the policy as if it provided insurance for two separate boats. We reject that strained construction. The tenders clause was designed to assure that the tender would be treated like any other piece of equipment on the yacht.

REVERSED.

[1]. The Wilkinsons' reliance on *Dennis v. Home Insurance Company*, 136 F. 481 (S.D.N.Y.1905) is misplaced. There, the question was whether a launch which was destroyed by fire while enroute from its yacht to shore was covered under a policy insuring all the equipment and appurtenances "of and in" the yacht. The insurer denied liability, contending that its loss was not covered because the launch was off the yacht and therefore "separate and apart therefrom." The court rejected the insurance company's argument and held that tenders "when being used in the ordinary manner" are "of and in" the yacht within the meaning of the policy. The *Dennis* court treated the tender like all other equipment of the yacht. To the extent that *Dennis* has any relevance, it is that the tender should be treated like sails or other yacht equipment and, therefore, as thus treated it fits snugly within the language of the exceptions clause.